1   LAWRENCE M. SCHWAB (Bar No. 085600)
    THOMAS A. BURG (Bar No. 211937)
2   Bialson, Bergen & Schwab
    633 Menlo Ave., Suite 100
3   Menlo Park, CA 94025
    Telephone:  (650) 857-9500
4   Facsimile  (650) 494-2738
    lschwab@bbslaw.com
5   tburg@bbslaw.com

6   Attorneys for Plaintiff
    SEAGATE TECHNOLOGY LLC
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11
    SEAGATE TECHNOLOGY LLC, a          CASE NO.
12  Delaware Limited Liability Company;
                                        COMPLAINT FOR:
13           Plaintiff,                 1.  **BREACH OF CONTRACT;**
                                        2.  **ACCOUNT STATED (COMMON COUNT);**
14      v.                              3.  **OPEN BOOK ACCOUNT (COMMON
                                            COUNT)**
15  RAINBOW COMPUTERS CORP.; a          4.  **QUANTUM VALEBANT (COMMON
    Florida Corporation;                    COUNT)**
16
             Defendants.
17                                      **(JURY TRIAL DEMANDED)**

18

19
         Plaintiff Seagate Technology LLC ("Seagate") alleges as follows:
20
                          **JURISDICTION AND VENUE**
21
         1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.   The
22
    amount in controversy exceeds $75,000.00.
23
         2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that,
24
    among other things, a substantial part of the events or omissions giving rise to the claims herein
25
    occurred in this judicial district and defendant Rainbow Computers Corp. ("Rainbow") consented
26
    to the jurisdiction of this Court in the underlying agreement between the parties.
27

28

                                        - 1 -                          COMPLAINT

**INTRADISTRICT ASSIGNMENT**

3.     Assignment to the San Jose Division of this Court is appropriate under Local Rule 3-2(e).

**NATURE OF ACTION**

4.     This action is brought to enforce the terms of an agreement between Seagate and Rainbow.  In the agreement, Rainbow agreed to make payment for products provided by Seagate. Seagate provided products but Rainbow failed to fulfill its payment obligations and, as a result, Seagate was forced to bring the present action.

**THE PARTIES**

5.     Seagate is a Delaware Limited Liability Company with its principal place of business in Cupertino, California.

6.     Upon information and belief, Rainbow is a Florida Corporation with its principal place of business in Doral, Florida.

**FACTS UNDERLYING THE CLAIMS FOR RELIEF**

7.     Seagate realleges paragraphs 1-6 as if set forth herein.

8.     Seagate is a leading provider of data storage products.

9.     Upon information and belief, Rainbow is a distributor of computer products.

10.     On October 1, 2011, Seagate and Rainbow entered into the Seagate Authorized Distributor Agreement.  On April 1, 2013 Seagate and Rainbow Executed Amendment No. 1 to the Seagate Authorized Distributor Agreement.  The Seagate Authorized Distributor Agreement and Amendment No. 1 shall be referred to collectively as the ("Agreement.")  A true and correct copy of the Agreement is attached as Exhibit A.  The Agreement is governed by the Seagate Authorized Distributor Terms and Conditions (the "Seagate Terms").  A true and correct copy of the Seagate Terms is attached as Exhibit B.

11.     Seagate performed all of its obligations under the Agreement and provided Rainbow with Seagate product.  Rainbow failed to make required payments for the products it received.

12.     Seagate is now owed $902,862.49, not including interest, by Rainbow.

COMPLAINT

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

13.     Seagate realleges paragraphs 1-12 as if set forth herein.

14.     The Agreement is a valid and enforceable contract.

15.     Seagate performed all of the conditions, covenants and obligations required of it under the Agreement except to the extent that such performance was prevented, waived or excused by Rainbow's conduct.

16.     Rainbow breached the Agreement by the acts herein alleged.

17.     Rainbow's breaches of the Agreement have proximately caused harm and damage to Seagate in an amount in excess of $902,862.49 to be proven at trial.

WHEREFORE, Seagate prays for judgment as set forth below.

**SECOND CLAIM FOR RELIEF**
(Account Stated (Common Count))

18.     Seagate realleges paragraphs 1-17 as if set forth herein.

19.     As described above, there is now owing an account stated in writing between Seagate and Rainbow in the amount of $902,862.49.

20.     Neither all nor part of that sum has been paid, although demand has been made. As a result, there is now due, owing and unpaid the sum of $902,862.49, with interest as allowed by law.

WHEREFORE, Seagate prays for judgment as set forth below.

**THIRD CLAIM FOR RELIEF**
(Open Book Account (Common Count))
(Against All Defendants)

21.     Seagate realleges paragraphs 1-20 as if set forth herein.

22.     Within the past four years, Rainbow became indebted to Seagate on an open book account for money due in the sum of $902,862.49 which Rainbow agreed to pay.

23.     The sum has not been paid although a demand therefor has been made, and there is now due, owing and unpaid the sum of $902,862.49 with interest as allowed by law.

### FOURTH CLAIM FOR RELIEF
(Quantum Valebant (Common Count))

24.      Seagate realleges paragraphs 1-23 as if set forth herein.

25.      As described above, Seagate provided products to Rainbow in accordance with the Agreement and at Rainbow's request.  Rainbow promised to pay the reasonable value and accepted and used the products.  Seagate provided these products and services in the good faith belief it would be paid for the products.  Rainbow, in turn, benefitted from the products.  Seagate is entitled to the fair and reasonable value of the products and services.

26.      Seagate requested payment for the products and services through invoices sent to Rainbow.  The fair and reasonable value of the products and services is $902,862.49.

27.      No payment has been made and there is now owing the amount of $902,862.49, with interest as allowed by law.

### PRAYER FOR RELIEF

WHEREFORE Seagate prays for judgment against Rainbow as follows:

1.      For damages according to proof at trial, with interest as allowed by law;

2.      For pre and post judgment interest on the damages according to proof;

3.      For costs of suit including reasonable attorneys fees;

4.      For such other and further relief as this Court deems just and proper.

Dated:  September 17, 2019          BIALSON, BERGEN & SCHWAB
                                    A Professional Corporation


                                    By:  /s/ Thomas A. Burg
                                         THOMAS A. BURG
                                         Attorneys for Plaintiff
                                         SEAGATE TECHNOLOGY LLC

COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Seagate Technology LLC

3   hereby demands a jury trial on all issues triable by a jury.

4     Dated:  September 17, 2019          BIALSON, BERGEN & SCHWAB
                                          A Professional Corporation
5

6                                         By:  /s/ Thomas A. Burg
7                                             THOMAS A. BURG
                                             Attorneys for Plaintiff
8                                             SEAGATE TECHNOLOGY LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT "A"



**Seagate**

### SEAGATE AUTHORIZED DISTRIBUTOR AGREEMENT

This Seagate Authorized Distributor Agreement ("**Agreement**") takes effect from October 1, 2011 ("**Effective Date**") and is made for good and valuable consideration between:

**Seagate Technology LLC ("Seagate")** and **Rainbow Computers Corp.** ("Distributor", "You", "Your", and "**Yourself**") for the following Territory:  United States.

1.   The Agreement consists of this Agreement Cover Part and, in the order of precedence,

   - the Appendices, and the
   - Authorized Distributor Terms and Conditions,

   which are attached hereto or available on request from Seagate, and which may be amended by Seagate from time to time in accordance with the terms of this Agreement.  Capitalized terms shall have the meaning defined in this Agreement Cover Part, in the Authorized Distributor Terms and Conditions, or otherwise in a writing issued or signed by Seagate.

2.   Payment terms are net 30 days from date of invoice, subject to Section 9 of the Authorized Distributor Terms and Conditions and any Appendix.

3.   This Agreement applies to any quote, purchase order and order acknowledgment, and any sale, license or delivery of hardware, software, services or other products by Seagate to You.  This Agreement also applies to any other transactions and business dealings, unless Seagate has signed a separate, specific contract relating to such other transactions or dealings.

4.   By submitting a purchase order, accepting delivery or otherwise proceeding with a transaction after the Effective Date, You agree to the terms of this Agreement.

Agreed and duly signed by:

**Seagate Technology LLC**

By: _____

Name:  Patrick J. O'Malley

Title:  CFO and EVP

Date:  12/1/2011

**Address for Notice to Seagate:**

   Seagate Technology LLC
   Corporate Contracts, Legal Department
   Mail Stop: CPCA03C16
   10200 South DeAnza Boulevard
   Cupertino, CA  95014

Email:   CorporateContracts@seagate.com

**Rainbow Computers Corp.**

By: _____

Name: EDUARDO PRBPELICHI

Title: PRESIDENT

Date: 11 15 2011

**Address for Notice to Distributor:**

Rainbow Computing Corp
6000 NW 97th Ave Ste. 21
Doral, Fl. 33178
_____
_____

Fax: (305) 892-9178
Phone: 305 892 2611
Email: eduardo@rainbowcan.

**AMENDMENT NO. 1**
**TO SEAGATE AUTHORIZED DISTRIBUTOR AGREEMENT**

This Amendment No. 1 (this "Amendment") to Seagate Authorized Distributor Agreement is entered into by Seagate Technology LLC ("Seagate") and Rainbow Computer Corp. ("Contractor"). Seagate and Contractor previously entered into the Seagate Authorized Distributor Agreement identified as Seagate Agreement No. 126639 (the "Agreement").

| Seagate: | Distributor: |
|---|---|
| **Seagate Technology LLC**<br>Attention: Corporate Contracts<br>Mail Stop: CPCA 03C16<br>10200 South De Anza Boulevard<br>Cupertino, CA 95014 | **Rainbow Computer Corp.**<br>Attn:<br>6000 NW 97th Avenue<br>Suite 21<br>Dural, FL  33148 |

| Authorized Signature: | ▶ Kenneth M. c | Authorized Signature: | ▶ Edenw |
|---|---|---|---|
| Print Name: | Kenneth M. Massaroni | Print Name: | EdUARDO Prepelitchi |
| Title: | Executive Vice President, General Counsel & CAO | Title: | President |
| Date: | April 17, 2013 | Date: | 4-12-13 |

| Underlying Ref. No.: | 126639 |
|---|---|
| Amendment Ref. No: | 139118 |
| Amendment Effective Date: | April 1, 2013 |

The parties agree to amend the Agreement as follows:

**1.     AMENDMENTS**

1.1     The "Territory Section" is deleted in its entirety and replaced with the following:

Latin America; including Florida, USA (for export), the Caribbean, Central America, South America and Mexico.

**2.     MISCELLANEOUS**

2.1     **Dispute Resolution**. Seagate and Contractor shall resolve any dispute relating to this Amendment in the same manner as set forth in the dispute resolutions provisions in the Agreement. The laws of the State of California, without regard to its conflicts of laws rules, govern this Amendment and any disputes relating to this Amendment.

     2.2     **Entire Agreement; Incorporation**. This Amendment is the entire agreement between Seagate and Contractor regarding this subject matter. The terms of this Amendment are incorporated into the Agreement.

     2.3     **Authorization; Notices**. Each person signing this Amendment represents that he or she is authorized to sign on behalf of his or her company. All notices given related to this Amendment must be sent to addresses specified above, or any other addresses the parties designate in writing.

# EXHIBIT "B"

**SEAGATE AUTHORIZED DISTRIBUTOR TERMS AND CONDITIONS**

These Seagate Authorized Distributor Terms and Conditions ("**Distributor Terms**") and all other terms of the Agreement shall apply to any quote, purchase order, order acknowledgment, sale, or license to any delivery of hardware or software, services or other products from Seagate to You.  Capitalized terms have the meanings defined in Section 1 below and other sections of the Agreement (including the Agreement Cover Part).

1.   **DEFINITIONS**

- **"Affiliate"** means a third party (person or entity) that is controlled by, under control of, or under control with a party to this Agreement.
- **"Agreement"** has the meaning set forth in the Agreement Cover Part.
- **"Agreement Cover Part"** means the part of the Agreement that precedes the signature pages.
- **"Appendix"** or **"Appendices"** means any attachment, exhibit, schedule, supplement, amendment, or modification to this Agreement that Seagate issues in writing, or expressly agrees to in a duly signed writing, including without limitation Sales Programs, the Distributor Price List and Product Authorization, and Policies.
- **"Distributor"**, **"You"**, **"Your"**, and **"Yourself"** has the meaning set forth in the Agreement Cover Part.
- **"Distributor Price List and Product Authorization"** means the distribution price list and Your product line authorization as updated from time to time by Seagate.
- **"Effective Date"** has the meaning set forth in the Agreement Cover Part.
- **"Policies"** means policies issued by Seagate relating to sales operations, including without limitation, stock rotation, price protection, minimum order quantity, warranty, market integrity and data reporting requirements as updated from time to time by Seagate.
- **"Products"** means any goods or services that Seagate includes on the Distributor Price List and Product Authorization, or that Seagate, at its sole discretion, decides to offer or sell.
- **"Purchase Order"** or **"PO"** means Your offer or request to buy Products from Seagate that meet all requirements set forth in the Agreement.
- **"Sales Programs"** means any sales incentive programs with terms approved by an authorized representative of Seagate and offered by Seagate on a one-time or periodic basis as updated from time to time by Seagate.
- **"Seagate"** has the meaning set forth in the Agreement Cover Part.
- **"Territory"** means the geographic area specified in the Agreement Cover Part.

2.   **APPOINTMENT AND AUTHORITY OF DISTRIBUTOR**

2.1   <u>Appointment</u>.  Seagate appoints You as a non-exclusive distributor of the Products within the Territory, and You accept such appointment, subject to the terms and conditions of this Agreement.  You will not be obliged to issue and Seagate will not be obliged to accept a Purchase Order for any particular Products at any particular time and nothing in this Agreement will prevent either party from entering into similar agreements with any third party.

2.2   <u>Resale Prices</u>.  You may freely determine Your resale prices.

2.3   <u>Independent Contractor</u>.  The relationship between Seagate and You established by this Agreement is that of independent contractors.  Neither party will be deemed to be the agent, employee, fiduciary, partner or co-venturer of the other party for any purpose whatsoever.  Without limiting the generality of the foregoing, the parties acknowledge that sales staff and other business personnel may sometimes use terms like "partner" or "partnership" to appeal to courtesy and cooperative spirit, but that nothing herein or in the course of dealing shall ever imply the creation of a partnership or any partnership-like obligations, rights or expectations between the parties.  Moreover, without limitation, You will have no right (and will not represent to any third parties that You have the right) to (a) make any representations or warranties on behalf of Seagate, (b) receive or accept orders on behalf of Seagate, (c) collect or make payments for Seagate unless specifically authorized, or (d) otherwise create or assume any binding legal obligations or liabilities to third parties for Seagate.  All financial obligations associated with Your business are Your sole

responsibility.

**3.      OBLIGATIONS OF DISTRIBUTOR**

3.1     <u>Promotion and Advertising</u>.  You will advertise and promote the Products in the Territory in a commercially reasonable manner and in accordance with applicable law and Seagate guidelines.  You will provide samples of advertising and sales literature to Seagate on request.

3.2     <u>Daily Inventory Reports</u>.  You will provide Seagate with a Daily Inventory Report, via EDI (EDI 846 or its equivalent), XML or other agreed upon electronic means, as of the end of each business day, which must include:

- Your name;
- Daily Inventory Report date and time;
- warehouse location code where Product is stored;
- country code for each warehouse location;
- code indicating inventory type: (a) Return Material Authorization (RMA); (b) Product delivered to You and in transit between Your internal locations; (c) ordered but not invoiced; and (d) on-hand inventory available for sale to Your customers;
- date of inventory reflected in Daily Inventory Report (must be the same date for all locations);
- quantity in inventory of each Product at end of the Daily Inventory Report date sorted by Seagate model number;
- the number of customer returns; and
- any other data specifications identified by Seagate, including without limitation those identified in the Policies.

3.3     <u>Distributor's Daily Point of Sales (POS) Report</u>.  You will provide Seagate with a Daily POS Report, via EDI (EDI 867 or its equivalent), XML or other agreed upon electronic means, as of the end of each business day, which must include:

- Your name;
- Daily POS Report date and time;
- warehouse location code(s) from which Product was invoiced for sale to customer;
- country code for each warehouse location;
- invoice date and number used to invoice customer;
- "Bill To" customer city, ISO country code, postal code and customer name, mailing address (street or PO box), customer number, and tax ID number
- "Ship To" customer name, mailing address (street or PO), city, ISO country code, postal code;
- quantity of Products invoiced to each customer by Seagate model and, if requested by Seagate in the Policies, serial number;
- Your resale price currency and resale price to customer (if and to the extent permitted by applicable law);
- SPA authorization numbers;
- the number of customer returns recorded as a negative quantity; and
- any other data specification identified by Seagate, including without limitation those identified in the Policies.

3.4     <u>Reporting Obligations</u>.  Failure to accurately and timely provide complete Daily Inventory Reports and Daily POS Reports, and any other violation of reporting obligations constitutes a material breach of this Agreement and, at the sole discretion of Seagate, will void Your right to participate in Sales Programs and Policies, in addition to any other rights or remedies Seagate has under the Agreement, statutes, law or equity.

3.5     <u>Training and Support</u>.  You are responsible for providing customer support to Your direct customers.  Seagate may, from time to time, develop and modify guidelines and procedures specifying the nature, level and manner of technical support You are required to provide to Your customers.

3.6    <u>Legal Requirements</u>.  You represent and warrant that You fully comply and will continue to comply with all U.S. laws and any other applicable laws that do not contradict or violate applicable U.S. laws.  Without limiting the generality of the foregoing, You represent and warrant that You have obtained, and that You will continue to obtain and maintain, all permits, licenses and government registrations necessary or appropriate to perform Your obligations under this Agreement and make all filings with governmental authorities required by applicable law (except legal requirements that contradict or violate applicable U.S. law, which You will notify Seagate of in writing).  At Seagate's request, You must provide written assurances of compliance with this clause and applicable U.S. and other applicable laws that do not contradict or violate U.S. laws, signed by one of Your authorized officers.

3.7    <u>Distributor's Business Practices</u>.  You will conduct business in a manner that reflects favorably at all times on the Products and Seagate's goodwill and reputation; avoid deceptive, misleading or unethical practices; make no false or misleading representations with regard to Seagate or the Products; and not solicit orders from any customer that engages in illegal or deceptive trade practices or any other practices prohibited under this Agreement.

3.8    <u>Compliance with Anti-Bribery Laws</u>.  In performing Your obligations under this Agreement, You must comply strictly with anti-bribery laws applicable in any jurisdiction where You do business and with the United States Foreign Corrupt Practices Act, 15 U.S.C. sec. 78dd-1 *et seq.* and any similar local laws.  You certify that You have not offered to pay or authorized any third party to pay or give, and do not and will not offer to pay or authorize any third party to pay or give, any money or any other thing of value, directly or indirectly to any government official or employee; any political party or official or employee thereof; or any candidate for political office, in order to obtain or retain any business, or secure any improper advantage.  You acknowledge that Your breach of this Compliance with Anti-Bribery Laws section is grounds for Seagate's immediate termination of this Agreement.

3.9    <u>Limitations</u>.  You may not sell, market or promote Products outside the Territory without written notice to and consent from Seagate; provided, however, that if Your Territory includes one or more European Economic Area (EEA) member states, this section shall not limit Your ability to sell to any EEA member state.

3.10    <u>Appendices</u>.  You will comply with terms of the Appendices including, without limitation, the Sales Programs and Policies.

## 4.    PRICING

4.1    <u>Distributor Price List</u>.  The current prices of Product that You are eligible to purchase are listed on the Distributor Price List and Product Authorization.  Seagate will invoice You for prices in effect at time of shipment, subject to the terms of any Appendix.

4.2    <u>Taxes and other Charges</u>.  All prices described herein are exclusive of federal, state and local taxes, including, without limitation, excise, sales, use, value added, goods and services tax, consumption, business, transaction and any other taxes, as well as export and import duties and any other charges on purchase, importation or resale, including, without limitation, copyright levies, WEEE compliance costs, charges related to compliance with the packaging directive and any other costs and charges relating to any other compliance schemes and requirements.  You will pay or reimburse Seagate for any and all taxes and charges, except U.S. Federal and California income tax on Seagate.  Also, You will comply with all registration, reporting, take-back and other requirements relating to purchase, importation, resale and other activities contemplated by this Agreement, including, without limitation, requirements under the laws referenced in the preceding sentences of this Section 4.2.

4.3    <u>Fees and Documents</u>.  Prices for Products do not include fees for forwarding agents, consular invoices, or for any other documents required by the country of destination, import or customs fees or any of the duties or tariffs all of which fees are at Your expense.  You are responsible for obtaining all required import licenses, permits or other governmental orders.

**5.      PURCHASE ORDERS**

5.1     <u>Orders</u>.  To order Product, You must electronically submit Purchase Orders to Seagate (*e.g.*, EDI, XML, RosettaNet, SOLO or other agreed upon electronic means).  Purchase Orders must contain:

- PO Number;
- PO Date;
- Seagate part number;
- Quantity ordered by part number;
- Pay terms discount percent, discount days, net days;
- "Ship To" location by identifying code and "Ship To" address;
- PO line number;
- PO Product price payable to Seagate;
- Requested ship date; and
- Your tax exemption certificate/VAT number, if applicable.

5.2     <u>Purchase Order Acceptance</u>.  All Purchase Orders are subject to acceptance by Seagate.  If Seagate accepts Purchase Orders by shipping Products or otherwise fulfilling Purchase Orders, such fulfillment shall constitute acceptance only to the extent Seagate actually fulfills.

5.3     <u>Minimum Order Requirements</u>.  All Purchase Orders are subject to Seagate minimum order requirements, as communicated to You from time to time.

5.4     <u>Precedence</u>.  All Purchase Orders will be exclusively governed by the terms and conditions of this Agreement.  The terms of this Agreement will take precedence over any conflicting term contained in a purchase order from You.  You will not present and Seagate does not accept, and Seagate hereby expressly rejects, any additional or different terms that You may attach or reference in purchase orders, or that You otherwise present.  Additional or different terms will not apply, even if Seagate does not reject such terms on every or any occasion.

**6.      SHIPMENTS, TITLE AND FREIGHT**

6.1     <u>Shipments</u>.  All Products shipped to You will be packed for shipment in Seagate's standard packaging and marked for shipment with the address provided by You.  Drop shipments to Your customers must be approved in writing by Seagate.

6.2     <u>Freight Terms</u>.  Seagate Products will be shipped to the You as follows:

(a)     For orders that meet the requirements of Seagate's Policies (*e.g.*, pre-paid freight program), Seagate will ship the Products CPT DESTINATION (INCOTERMS 2010).  "Destination" will be determined by the terms of Seagate's pre-paid freight program.  Seagate will arrange and pay the cost of carriage to "destination."  Delivery will be complete and the risk of loss will transfer to You when Seagate has delivered the Products to the carrier.  You will be responsible for customs clearance at destination.

(b)     For orders that do not meet the requirements of Seagate's Policies, Seagate will ship the Products FCA ORIGIN (INCOTERMS 2010).  You will be responsible for paying the cost of carriage. Delivery will be complete and the risk of loss will transfer to You when Seagate has delivered the Products to the carrier.

(c)     Seagate may, at its sole discretion, modify these freight terms.

6.3     <u>Risk of Loss; Title</u>.  Risk of loss and title to the Products will transfer to You from Seagate when Seagate

has delivered the Products to the carrier.

6.4   <u>Expedited Deliveries</u>.  You may request expedited delivery of Products.  You will be responsible for the difference between the Seagate-designated freight carrier's standard freight charge and the cost of the expedited shipment.

6.5   <u>Return Shipments</u>.  Except as expressly stated to the contrary in this Agreement, You will be responsible for all freight costs for Products returned to Seagate.

6.6   <u>Distributor Shipments to Customers</u>.  You will package and ship Products to Your customers in Seagate-approved packaging.

**7.   RESCHEDULING AND CANCELLATION**

7.1   <u>Rescheduling</u>.  You may reschedule any unshipped Product provided that Seagate receives at least fourteen (14) days written notice prior to the scheduled ship date.  The new ship date must not be more than thirty (30) days from the originally scheduled ship date.  Purchase Orders may only be rescheduled once.

7.2   <u>Cancellation</u>.  You may cancel any unshipped and non-rescheduled Product on order without charge, provided Seagate receives at least thirty (30) days written notice prior to the scheduled ship date.  Seagate may cancel any Purchase Order prior to shipment.

**8.   PRODUCT CHANGES**

8.1   <u>Additional and Removed Products</u>.  Seagate may, from time to time, add or remove Products to and from the Distributor Price List and Product Authorization.

8.2   <u>Product Discontinuance</u>.  Seagate may discontinue manufacture of any Product at its sole discretion, on such terms and conditions as it may determine.  You may purchase such discontinued product under the terms and conditions set forth in Seagate's End of Life (EOL) notice of Product discontinuance.

**9.   PAYMENT TERMS**

9.1   <u>Invoice Payment</u>.  Unless otherwise provided in the Agreement Cover Part or an Appendix, all payments are due net 30 days from date of invoice.  All payments must be made by wire transfer and in U.S. dollars.  Overdue payments will be subject to a service charge of one and one-half percent (1 1/2%) per month or the maximum amount allowed by law, whichever is less, until paid in full.

9.2   <u>Credit</u>.

(a)   <u>Financials</u>.  Seagate extends payment and credit terms at its sole discretion.  To qualify for payment terms and a credit line, You must initially provide Seagate's Credit Department with Your most recently audited annual financial statements for the previous two fiscal years and all quarterly financial statements for Your current fiscal year.  Thereafter, You must provide Seagate's Credit Department with copies of Your audited financial statements and quarterly financial statements within sixty (60) days of the close of the applicable fiscal period.

(b)   <u>Credit Line</u>.  Seagate reserves the right to amend the amount of Your credit line at any time.  If You exceed Your credit line or fail to qualify for continued credit terms, Seagate may, at its sole discretion, delay or cancel shipments, or require payment prior to delivery.

(c)   <u>Debit Memos</u>.  Seagate will not accept any debit memos issued to Seagate by You unless expressly authorized in writing by Seagate.  You will not be entitled to any credit taken pursuant to an unauthorized debit memo.

(d)   <u>Security Interest</u>.  Until the purchase price and all other charges payable to Seagate hereunder have

been received in full, Seagate retains the right to exercise its legal remedies to perfect a security interest in the Products delivered to You (by way of title retention or otherwise, as provided by applicable law).  You agree to promptly execute documents requested by Seagate to formally grant, perfect and protect such title retention or other security interest.

## 10.    LIMITED WARRANTY

10.1    <u>Limited Warranty</u>.  As of the date of shipment, Seagate represents that the Products are new or, if they contain remanufactured or used components, are the equivalent of new in performance and reliability.  If Seagate receives a detailed, substantiated claim from You, before the end of the applicable warranty period specified by Seagate as of the time of shipment, Seagate will, with respect to any Product failing to function under normal use or due to a defect in materials or workmanship, repair or exchange such Product, at Seagate's option and expense, or Seagate may issue a credit to You pursuant to Seagate's published warranty terms included in the Policies.  Seagate makes no representation, warranty or guaranty, express or implied regarding the Products except the limited warranty in the preceding two sentences of this Section 10.1 (including any modifications published in the Policies, the **"Limited Warranty"**).  Seagate may at its sole discretion modify its Limited Warranty at any time.  This Limited Warranty extends to You only and is not assignable or transferable.  This warranty is void if the defect is the result of accident, abuse, unauthorized repair, modification or misapplication.  Seagate's consumer limited warranty statements (on paper, electronic media or published online and expressly referenced in materials accompanying Products) are intended for end user customers only.  You will refer end user customers to Seagate in accordance with the terms of the applicable end user warranty statement if Seagate, at its sole discretion, makes a consumer limited warranty statement available for a particular Product.

10.2    <u>Warranty Remedy</u>.  Repair, exchange or replacement in accordance with this Agreement and any Appendix is Your sole and exclusive remedy under the Limited Warranty.  If Seagate is unable to repair, exchange or replace the Product, or unable to provide credit to You, or if the Limited Warranty is found to have failed of its essential purpose, the parties agree that Your exclusive remedy and Seagate's sole liability in contract, tort or otherwise is the payment by Seagate of actual damages in an amount not to exceed the amount paid for the Product.  To the extent that any Product contains software (**"Software Product"**), Your sole and exclusive remedy for Software Product will be limited to bug fixes, if and when available.

10.3    <u>Returned Product</u>.  You will obtain from Seagate an RMA number, subject to Seagate's then-current terms and conditions and processes for product returns available at <u>www.seagate.com</u> (**"Product Return Policy"**) prior to returning nonconforming Product, freight prepaid, to a Seagate-designated destination.  You will identify whether the Product being returned is a "factory failure" (failure during installation) or a "field failure" (failure during consumer use) when providing information for the RMA.  Separate RMA requests should be used to distinguish each of the two categories of returns.  If applicable, Seagate will pay for transporting the repaired or exchanged Product to You CPT DESTINATION (INCOTERMS 2000) customs clearance, duty and taxes excluded.  Repaired or exchanged Product will be warranted for Seagate's repair warranty period in effect as of the date of shipment by Seagate (*e.g.*, 90 days) or the remainder of the original warranty, whichever is longer.

10.4    <u>No Trouble Found, Tampered, and Damaged Product</u>.  In the event that any returned Product conforms to Seagate's specification or is not covered by warranty (because, for example, without limitation, a warranty does not apply, the warranty period expired, the Product was damaged or tampered, or You submit products that were not made or sold by Seagate), Seagate reserves the right to return such products to You freight collect, cancel any credit issued, and charge You a US$50.00 per unit testing and handling fee in addition, not in lieu of, any other costs or damages incurred.

10.5    <u>Stored Data</u>.  You or Your customer will be responsible for backing up and deleting all user data, including government controlled or restricted data, in any Product returned to Seagate for in-warranty or out-of-warranty repairs or service.  **SEAGATE WILL HAVE NO RESPONSIBILITY FOR DISTRIBUTOR AND CUSTOMER DATA AND WILL HAVE NO LIABILITY ARISING OUT OF ANY DAMAGE TO, OR LOSS OF, SUCH DATA WHILE THE PRODUCT IS IN SEAGATE'S POSSESSION.**

10.6 <u>Product Return Policy</u>. You agree to comply with and be bound by the Product Return Policy available at www.seagate.com. Seagate reserves the right to refuse service, cancel Your RMA, or refuse shipments of returned Product if Your RMA order was placed in violation of Seagate's Limited Warranty or the Product Return Policy. All Products returned to Seagate must be packed in their original shipping container or in Seagate-approved packaging. Unless otherwise provided for herein, all Products must be shipped by a freight carrier experienced in handling sensitive freight.

10.7 <u>Seagate Responsibility</u>. Seagate will not be required to accept Products with adhesive tapes, labels, permanent markings or other residue applied to the Products by You or Your customer. You will return all Products in standard configuration. All nonstandard items such as nonstandard face plates or side rails must be removed before shipping Product to Seagate. Seagate will not be responsible for its failure to return any nonstandard items.

**11. WARRANTY DISCLAIMER.**

**THE LIMITED WARRANTY SET FORTH IN SECTION 10.1 STATES THE SOLE LIABILITY AND OBLIGATION OF SEAGATE FOR PRODUCTS. SEAGATE MAKES NO PERFORMANCE REPRESENTATIONS, WARRANTIES, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, ORAL OR WRITTEN WITH RESPECT TO THE PRODUCTS AND ANY SERVICES COVERED BY OR FURNISHED PURSUANT TO THIS AGREEMENT, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY (A) OF MERCHANTABILITY; (B) OF FITNESS FOR A PARTICULAR PURPOSE; (C) OF NON-INFRINGEMENT; OR (D) ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING, OR USAGE OF TRADE.**

**12. SALES PROGRAMS**

Seagate may, from time to time, offer Sales Programs on a one-time or periodic basis. Seagate may modify or cancel Sales Programs and Policies at any time. Sales Programs may only be offered by authorized representatives of Seagate and are void where prohibited.

**13. TERMINATION**

13.1 <u>Termination for Convenience</u>. The parties acknowledge that neither is exclusive to the other and that competitive and other conditions may change in the future, and, accordingly, that either party may desire, for any or no reason, to terminate the relationship established by this Agreement. This Agreement may be terminated by either party for its convenience and, at its sole discretion, by providing the other party with thirty (30) days prior written notice.

13.2 <u>Termination for Cause</u>. Either party may, without penalty, terminate this Agreement or cancel any purchase order or portion thereof, effective upon written notice to the other party in any one of the following events:

    (a) Immediately upon notice if the other party materially breaches this Agreement, including but not limited to if You fail to make payment when due to Seagate;

    (b) Upon notice for any *"Force Majeure" event that* delays the other party's performance for more than thirty (30) days; or

    (c) Immediately upon notice if a petition for relief under any bankruptcy or insolvency legislation is filed by or against the other party, or the other party makes an assignment for the benefit of creditors, or a receiver or administrator is appointed for all or a substantial part of the other party's assets, and such petition, assignment or appointment is not dismissed or vacated within thirty (30) days.

13.3 <u>Effect of Termination or Expiration</u>.

(a)     Accepted Purchase Orders/Payments.  In the event of a termination or expiration of this Agreement, the provisions of this Agreement will continue to apply to all Purchase Orders accepted by Seagate prior to the effective date of such termination or expiration.  Without limiting the generality of Sections 4 and 7 of these Distributor Terms, following notice of termination for convenience or cause, Seagate will be under no obligation to accept any additional Purchase Orders from You and may cancel any Purchase Order or portion thereof after providing notice of termination.  Termination or expiration of this Agreement will not, however, relieve or release either party from making payments that may be owing to the other party under the terms of this Agreement.

(b)     Compensation.  You acknowledge that You neither expect nor are entitled to recover any compensation from Seagate on account of the expiration or termination of this Agreement in accordance with its terms.  You agree to waive and hereby do waive the benefit of any law or regulation providing compensation to You rising from the termination or failure to renew this Agreement and You warrant that such waiver is irrevocable and enforceable by Seagate.  You also agree to indemnify and hold harmless Seagate for any and all claims for compensation asserted by Your employees or sub-representatives.  Furthermore, upon termination, Your rights under "*Effect of Termination or Expiration*" will immediately cease to exist.

(c)     Sales Programs.  Following termination, You shall no longer be eligible to participate in Sales Programs for any current or future program period.

13.4     Repurchase of Product.  In the event of a termination, You may request that Seagate repurchase certain Product in Your inventory.  The request must be in writing and submitted within ten (10) days of the date of the notice of termination.  The price to be paid for the Product will be based on the price at time of request, less any rebates or credits.  Seagate will have sole discretion whether to accept any offer to repurchase Product.  All Product that Seagate agrees to repurchase must be shipped to Seagate in one lot, freight prepaid.  Any repurchased Product must have been purchased and shipped from Seagate in the same quarter as the effective date of termination and be new, unused and in original, factory sealed packaging.

13.5     Survival Provisions.  All obligations herein, which by their terms or nature survive termination of this Agreement, will continue thereafter until fully performed.

**14.     INDEMNIFICATION**

14.1     Indemnification by Seagate.  Seagate agrees, at its expense, to defend and indemnify You in any suit, claim or proceeding (**"Claims"**) brought against You if and to the extent Your resale of any Product in full compliance with all terms of this Agreement actually infringes a copyright or trade secret protected under the laws of the Territory or any United States patent or United States trademark, on the condition that You promptly, but within no more than 30 days of receipt of knowledge or reason to know of the Claim, notify Seagate of such Claim in writing; provide reasonable assistance to Seagate; and permit Seagate to exclusively control the defense.  Seagate will have no liability for settlements or costs incurred without its consent.  Should Your use of any Product be enjoined, or in the event that Seagate is concerned about the possibility of injunctions, Seagate may, at its option and expense, substitute functionally equivalent, non-infringing product for the infringing Product; modify the infringing Product so that it no longer infringes, but remains functionally equivalent; or obtain for You the right to continue using such Product.  If none of the foregoing is feasible, Seagate may accept return of the Product and refund to You the purchase price (less reasonable depreciation) and Your paid shipping charges.

14.2     Sole and Exclusive Remedy.  Section 14.1 sets forth Your sole and exclusive remedies for any alleged or actual claims relating to intellectual property or third party rights infringements.

14.3     Exclusions.  Section 14.1 will not apply to any infringement arising out of:

(a)     the use of Product in systems if the cause of such infringement is proven to be the system itself or the combination of Product with such system or any components therein not supplied by Seagate;

    (b)    any Product modification not made by Seagate or made by another without Seagate's written approval or recommendation;

    (c)    the failure to promptly effect Seagate-furnished replacements or modifications intended to avoid such infringement; or

    (d)    the use of Product for purposes not contemplated by this Agreement or its intended use.

14.4    <u>Indemnification by Distributor</u>.  You will defend, indemnify and hold Seagate and its affiliated companies, directors, officers, employees, and agents harmless from any and all claims, losses, or damages (including reasonable attorneys' fees and costs of litigation) resulting from or related to any breaches of this Agreement, violations of applicable law, acts, omissions or misrepresentations of You or Your directors, officers, employees, and agents, regardless of the legal theory on which claims are brought and the form of action, in addition to, not in lieu of, any other rights or remedies Seagate may have under this Agreement, under applicable law or in equity.

14.5    <u>Survival</u>.  This Section 14 shall survive the termination of this Agreement.

## 15.    PROPRIETARY RIGHTS

15.1    <u>Intellectual Property</u>.  Under the terms of this Agreement, You do not acquire any right to any of Seagate's trademarks, patents, service marks, or trade names, or its copyrights, commercial symbols, goodwill, or other form of intellectual or commercial property of Seagate and shall not use such property or rights in any manner.

15.2    <u>Confidential Information</u>.  All proprietary information, which is specifically designated as such, which is disclosed by either party to the other, in any form, in connection with this Agreement, shall be kept confidential by the recipient.  Any such proprietary information will be protected by the recipient from disclosure to others with at least the same degree of care that which is accorded to its own proprietary information, but in no event with less than reasonable care.  Without limiting the foregoing, You expressly agree that any know-how, designs, engineering details and other data pertaining to any Product or portion thereof, will, without further need for designation, be deemed proprietary and confidential information of Seagate.  The foregoing will not apply to information that is generally known and available in the public domain through no fault of the recipient.

15.3    <u>Proprietary Notices</u>.  You will not remove or otherwise obscure any proprietary notices incorporated in, marked on, or affixed to the Products by Seagate.

15.4    <u>Seagate Marks</u>.  Without limiting the generality of Section 15.1 of these Distributor Terms, You may refer to Yourself as an "Authorized Seagate Distributor."  You will refer to Products with the identifiers, trademarks, service marks, and trade names designated by Seagate in writing (**"Seagate Marks"**), solely in connection with the marketing and distribution of the Products pursuant to this Agreement.  You shall not alter or remove any Seagate Mark applied by or on behalf of Seagate prior to delivery.  Your reference and display of any Seagate Marks must comply with Seagate branding guidelines available at https://branding.seagate.com (as may be updated from time to time).  You agree that You will not attempt to register any of the Seagate Marks in Your own name nor on behalf of Seagate without Seagate's prior written authorization.  All use of the Seagate Marks by You will inure solely to the benefit of Seagate.  You will not use Seagate Marks in Your trade name, Internet domain name or in any manner that implies a corporate affiliation with Seagate.

15.5    <u>Software Products</u>.  You acknowledge that any Software Products are licensed only, not sold, and Seagate retains title and ownership to all physical copies of software, the media in which it is stored, and related documentation, and intellectual property embodied in Software Products.  Nothing herein transfers any right, title or interest in the software or any intellectual property rights therein to You.  All such software and proprietary rights are subject to the terms and conditions of the software license agreement included

with each Software Product.

**16.     LIMITATION OF LIABILITY**

16.1     You agree that Seagate's liability under this Agreement, regardless of the form of action, will in no event exceed the greater of (a) amounts paid or payable by You during the 6 month period immediately preceding Your claim (counting from the day that Seagate receives Your first notice regarding the claim), or (b) $10,000.  Seagate's liability for any claims relating to particular units of Products shall not exceed the amount paid or payable for such unit by You.

16.2     **IN NO EVENT WILL SEAGATE BE LIABLE FOR COSTS OF PROCUREMENT OF SUBSTITUTE GOODS BY ANYONE OR FOR LOSS OF DATA, NOR WILL IT BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES.**

16.3     **THE LIMITATIONS OF LIABILITY SET FORTH IN SECTIONS 16.1 AND 16.2 HEREOF SHALL APPLY TO ANY DAMAGES, HOWEVER CAUSED, WHETHER FOR BREACH OF CONTRACT, TORT, STATUTE, OR OTHERWISE, WHETHER THE LIMITED REMEDIES HEREIN FAIL OF THEIR ESSENTIAL PURPOSE, AND WHETHER OR NOT SEAGATE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  AS THE SOLE EXCEPTION, THE LIMITATIONS OF LIABILITY SET FORTH IN SECTIONS 16.1 AND 16.2 HEREOF SHALL NOT APPLY TO DAMAGES THAT SEAGATE CAUSES TO DISTRIBUTOR INTENTIONALLY IN BREACH OF THIS AGREEMENT.  THE LIMITATION OF SEAGATE'S POTENTIAL LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT IS REFLECTED IN THE PRICES OF THE PRODUCTS.**

**17.     GENERAL PROVISIONS**

17.1     Notices.  All notices and other communications hereunder must be given in writing and delivered (a) by personal delivery, by prepaid overnight or courier service, to the addresses set forth on the signature page or such other address as the parties may designate in writing; or (b) by fax or email to such fax number or email address as may be provided in writing by a party.  Notices are deemed given on receipt or attempted delivery (if receipt is refused).

17.2     Publicity.  The terms of this Agreement must be treated by You and by Seagate as each treats its own confidential information.  No press release or other like publicity regarding this Agreement may be made without the other party's approval.

17.3     International Trade Compliance.  The Products may include technology and software that are subject to the customs and export control laws and regulations of the United States and the country in which the Products are manufactured, sold, exported or received, including the U.S. Export Administration Regulations.  You will comply with all applicable tax, export, re-export and foreign policy controls and restrictions of the U.S., Singapore (if You buy from Singapore), countries in which You are located, and countries to which You sell or send Products.  The Products may not be sold, leased or otherwise transferred to restricted countries, or used by a restricted end-user or an end-user known to engage in activities related to weapons of mass destruction including, without limitation, activities related to designing, developing, producing or using nuclear weapons, materials, or facilities, missiles or supporting missile projects, or chemical or biological weapons.  You, on behalf of Yourself and Your affiliated companies, employees, and agents, acknowledges that You will comply with and abide by those laws and regulations, and that any third party that You request Seagate to route Product to directly has also been made aware of the associated export controls.

17.4     Place of Contract Formation and Performance.  This Agreement is concluded, and Seagate's performance obligations are due and shall be fulfilled at the principal place of business of Seagate, as set forth in the Agreement Cover Part, except to the extent Seagate expressly and explicitly agrees otherwise in a duly signed writing.

17.5     Governing Law.  This Agreement will be governed by the laws of the State of California, without regard to its conflicts of laws rules.  The United Nations Convention on Contracts for International Sale of Goods does not apply to this Agreement.

17.6     Attorney Fees.  In the event of any litigation or mediation hereunder, the losing party shall pay costs and reasonable attorney's fees to the prevailing party.

17.7     Dispute Resolution.

   (a)     Good-Faith Negotiation Followed by Mediation.  The parties will attempt to resolve any dispute arising out of or relating to this Agreement (**"Disputes"**) in the following manner: First, they will engage in informal efforts of appropriate business principals for ten (10) days.  Thereafter, they will submit their dispute to mediation before a mutually agreed mediator from Judicial Arbitration and Mediation Services (JAMS) to be scheduled within ten (10) business days.  Mediation will be conducted at a JAMS facility in Santa Clara County, California, to whose jurisdiction the parties hereby consent.  The parties will bear their own costs.  For Disputes that are not resolved by mediation, the parties agree that all actions will be brought in state or federal courts located in Santa Clara County, California, and such courts shall have exclusive jurisdiction to resolve all Disputes.  This clause will survive the termination or expiration of this Agreement.

   (b)     Equitable Relief Excluded.  Either party may seek equitable relief at any stage without reference to this dispute resolution procedure.  Neither party may bring any other action until after the completion of mediation.  The provisions of this Section 17.7 may be enforced by any court of competent jurisdiction, and the party seeking enforcement will be entitled to an award of all costs, fees and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered.

17.8     Amendments.  The Agreement may not be amended or supplemented except by written notice provided by Seagate (which will become binding on You as specified in Seagate's notice, unless You terminate for convenience in accordance with the Agreement) or an express mutual agreement duly signed by authorized representatives of both parties.  You acknowledge that You shall not and may not rely on any verbal statements, agreements, promises or representations by any Seagate personnel or written statements, agreements, promises or representations by anyone other than an authorized Seagate representative. Seagate does not accept, expressly or impliedly, and Seagate hereby rejects, any additional or different terms or conditions presented by You, including, but not limited to, any terms or conditions contained or referenced in any order, acceptance, acknowledgment, or other document, or established by trade usage or prior course of dealing, even if Seagate does not individually reject such terms, unless Seagate expressly and unambiguously agrees to such terms and conditions in a duly signed writing with respect to a particular order or delivery or in an agreement that covers the specific types of products and is signed or expressly confirmed in a duly signed writing after the Effective Date.

17.9     Force Majeure.  Neither party will be liable to the other for its failure to perform any of its obligations hereunder during any period in which such performance is delayed by circumstances beyond its reasonable control including, but not limited to fire, flood, war, embargo, strike, riot, inability to secure materials and transportation facilities, or the intervention of any governmental authority.  If such delaying cause continues for more than thirty (30) days, the party injured by the inability of the other to perform will have the right upon written notice to either (a) terminate this Agreement pursuant to the "*Termination for Cause*" section or; (b) treat this Agreement as suspended during the delay and reduce any commitment in proportion to the duration of the delay.

17.10    Non-Approved Product Use.  You acknowledge that Seagate's Products are not designed for equipment used in environments requiring fail-safe performance, such as in the operation of nuclear facilities, aircraft navigation or communication systems, air traffic control, life support machines, weapons systems, or any other environment in which the failure of the Products could lead directly to death, personal injury, or severe physical or environmental damage (**"Non-Approved Product Use"**).  Seagate does not supply its Products for use in Non-Approved Product Use, and does not wish to expose itself to the risk of any loss, expense, cost,

liability, litigation and/or potential adverse verdict or judgment in relation to any use of its Products in Non-Approved Product Use. Accordingly, Seagate disclaims any and all liability for Non-Approved Product Use. If You elect to make and sell any products for Non-Approved Product Use using Seagate's Products, then You assume all risk for any such use of Seagate's Products. You agree to defend and indemnify Seagate against any and all claims arising out of any use of the Products in any Non-Approved Product Use.

17.11 <u>Severability</u>. The terms of this Agreement are severable. If any term is held invalid, illegal, or unenforceable for any reason whatsoever, such term must be enforced to the fullest extent permitted by applicable law and the validity, legality, and enforceability of the remaining terms will not in any way be affected or impaired.

17.12 <u>Assignment</u>. Neither this Agreement nor any right, interest or obligation hereunder may be assigned by You and any purported assignment will be null and void. Seagate may assign or transfer by way of novation this Agreement and any rights or obligations hereunder to an Affiliate by written notice to You. This Agreement will be binding upon, and will inure to the benefit of, the parties hereto and their respective successors and permitted assigns.

17.13 <u>Audits</u>. Upon two (2) business days notice to You, Seagate (including its selected firm of auditors) will have the right to audit, in order to determine Your compliance hereunder as well as compliance with applicable law, all books, records and electronic data relating to transactions and Sales Programs and Policies for the Products (**"Sales Data"**) and the Products in Your possession and inventory. You will maintain all Sales Data during the term of this Agreement and for a period of three (3) years thereafter. Any audits will be performed during Your normal business hours. If Seagate appoints an independent auditor to conduct the audit, You must agree to Seagate and its independent auditors standard nondisclosure agreements in connection with work undertaken by such independent auditor. In the event any such audit reveals that You have breached an obligation under this Agreement, then, in addition to such other remedies as Seagate may have, You must pay or reimburse to Seagate the cost of the audit. If You fail to maintain Sales Data as required by this Section 17.13, then Seagate may take remedial action in its sole discretion, including without limitation, recovery of amounts paid for Sales Programs and Policies, collection of audit fees, and termination of this Agreement.

17.14 <u>Insurance</u>. You must, at Your expense, at all times during the term of this Agreement provide and maintain in effect insurance policies and minimum limits of coverage as may be required by applicable law.

17.15 <u>Language</u>. This Agreement is in the English language only, which language will be controlling in all respects, and all versions hereof in any other language are for accommodation only and will not be binding upon the parties hereto. All communications and notices to be made or given pursuant to this Agreement must be in the English language.

17.16 <u>Entire Agreement</u>. The Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes and replaces all prior oral or written agreements, representations and understandings of the parties with respect to such subject matter.

17.17 <u>No Third Party Beneficiary Rights</u>. Only the parties named in the Agreement Cover Part shall have any rights or remedies under this Agreement. If Seagate, at its sole discretion, accepts a Purchase Order from one of Your Affiliates, such Affiliate shall become bound by all terms of the Agreement and You assume joint and several liability for all obligations relating to such Purchase Order and Affiliate's acts and omissions, including, but not limited to, payment thereof.

17.18 <u>Counterparts</u>. The parties may sign this Agreement in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the parties need not appear on the same counterpart, and delivering a facsimile of a signed counterpart signature page by electronic or other delivery method is as effective as executing and delivering this Agreement in the presence of the other parties to this Agreement.